[Crim. No. 6412. In Bank. May 12, 1959.]

THE PEOPLE, Respondent, v. FRANK CAMODECA,
Appellant.

144

[redacted]

Robert H. Kroninger for Appellant.

Edmund G. Brown and Stanley Mosk, Attorneys General, Clarence A. Linn, Chief Assistant Attorney General, John S. McInerny, Deputy Attorney General, J. F. Coakley, District Attorney (Alameda), and C. Zook Sutton, Deputy District Attorney, for Respondent.

TRAYNOR, J.—Defendant held a contract of sale and collected the monthly payments on a bar owned and operated by William L. Murphy. On June 15, 1957, Murphy discussed with defendant the possibility of removing the name of Murphy's "common-law wife" from the contract of sale and from the bar's beer and wine license. Defendant stated that this could be done but that it would require a "fix." He also told Murphy that the Department of Alcoholic Beverage Control had certain charges on file against the bar and that those charges could be fixed and the license cleared if Murphy would give defendant $720 to pass on to certain persons in Sacramento. There were no reported violations in fact, but Murphy believed the misrepresentations and attempted to raise the money. When he was unable to do so he brought the matter to the attention of the district attorney. A meeting between Murphy and defendant was arranged for June 18th, when defendant was to receive the money. By arrangement with Murphy, police officers were hidden near the place of the second meeting, and the conversation was recorded. On learning that Murphy was unable to raise the money, defendant stated that the money had already been paid to the officials in Sacramento by an unnamed man who would be "unhappy" if Murphy did not make prompt reimbursement. Defendant was then placed under arrest and charged with attempted grand theft.

The trial court, sitting without a jury, found defendant guilty of two counts, attempt to commit grand theft and attempt to commit extortion. The sentences were to run concurrently. Defendant appeals.

██ "In order to establish an attempt, it must appear that the defendant had a specific intent to commit a crime and did a direct, unequivocal act toward that end. . . ." (*People* v. *Gallardo*, 41 Cal.2d 57, 66 [257 P.2d 29].) ██ "Preparation alone is not enough, there must be some appreciable fragment of the crime committed [and] it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter. . . ." (*People* v. *Buffum*, 40 Cal.2d 709, 718 [256 P.2d 317]; see *People* v. *Miller*, 2 Cal.2d 527, 530 [42 P.2d 308]; *People* v. *Van Buskirk*, 113 Cal.App.2d 789, 792-793 [249 P.2d 49]; *People* v. *Franquelin*, 109 Cal.App.2d 777, 783 [241 P.2d 651].)

██ The evidence in the present case is sufficient under the foregoing rules to sustain the conviction of attempted grand theft. Defendant's admissions to the police that he attempted to get the $720 from Murphy by falsely representing that he could get the violations "fixed" and that the money was to be for his own use, establish a specific intent to obtain money by false pretenses. (See Pen. Code, § 484.) His conduct in seeking to accomplish that objective went well past the stage of "mere preparation." (See *People* v. *Buffum*, 40 Cal. 2d 709, 718 [256 P.2d 317].) ██ After his meeting with Murphy and his threats to secure payment of the bribe money, the only further act necessary to consummate the crime of grand theft was actual receipt of the money. This conduct was unequivocal action done toward the commission of the crime (compare *People* v. *Wallace*, 78 Cal.App.2d 726, 742 [178 P.2d 771]; *People* v. *Hickman*, 31 Cal.App.2d 4, 7-11 [87 P.2d 80]; *People* v. *Arberry*, 13 Cal.App. 749, 757-758 [114 P. 411]), and is clearly sufficient to sustain the conviction of attempted grand theft.

██ Defendant contends, however, that his actions did not constitute an attempt to obtain money by false pretenses since his victim was not deceived by and did not rely on the misrepresentations. It is urged that although Murphy may have been deceived at the June 15th meeting, the direct ineffectual act necessary to constitute an attempt did not occur until June 18th, when defendant met Murphy to obtain the money. It is true that at that time Murphy was no longer deceived and

that the element of lack of consent, necessary to the substantive crime of grand theft, was missing. Defendant invokes *People* v. *Werner,* 16 Cal.2d 216 [105 P.2d 927], for the proposition that to constitute an attempted grand theft the victim must be deceived by and must rely on the false representations of the defendant. In that case, the defendant and his wife represented to a certain McNeil, who was then awaiting trial on grand theft charges, that they could have the charges against him dismissed for a specified sum. McNeil disbelieved their representations and reported the matter to the police, who arranged to trap the defendant when the money was paid to him. McNeil delivered a package supposedly containing the money to the defendant's wife and she and the defendant were then arrested. This court reversed a conviction of attempted grand theft, stating as an alternative ground of decision : ''We are satisfied that there cannot be a theft or an attempted theft of a person's property when voluntarily and without compulsion of any sort, and uninfluenced by any false or fraudulent representations, he actively hands it over to the alleged thief for the purpose of apprehending him as a thief or as an attempted thief—however reprehensible the latter's intent may be—for under such circumstances the essential element of lack of consent is missing.'' (16 Cal.2d at 225.) Although there is other authority in this state to the contrary (*People* v. *Wallace,* 78 Cal.App.2d 726, 740-742 [178 P.2d 771] ; *People* v. *Grossman,* 28 Cal.App.2d 193, 204 [82 P.2d 76] ; see also *People* v. *Lavine,* 115 Cal.App. 289, 300 [1 P.2d 496]), the Werner case supports defendant's position that deception of the intended victim and his reliance on the false representations are essential elements of the offense of attempted grand theft by false pretenses.

We are now convinced, however, that the Werner case is unsound in so holding. It failed to recognize the crucial distinction between the completed crime of false presenses and an attempt to commit such a crime. ■ The overwhelming weight of authority in this country (e.g., *People* v. *Gardner,* 144 N.Y. 119 [38 N.E. 1003] ; *State* v. *Peterson,* 109 Wash. 25 [186 P. 264, 8 A.L.R. 652] ; *Williams* v. *State,* 209 Miss. 902 [48 So.2d 598] ; *State* v. *Phillips,* 36 Mont. 112 [92 P. 299] ; *Commonwealth* v. *Johnson,* 312 Pa. 140 [167 A. 344]), and in England (e.g., *Regina* v. *Light,* 11 Crim.App.R. 111 ; *Regina* v. *Hensler,* 11 Cox.Cr.Cas. 570 ; *Regina* v. *Roebuck,* 7 Cox.Cr.Cas. 126 ; see 89 A.L.R. 342) holds that in a prosecution for attempted grand theft by false pretenses it is not necessary that the

defendant's intended victim be deceived by the falsity of the representations made to him (see also Perkins, Criminal Law 489-494; Wharton, Criminal Law and Procedure 354-355; Williams, Criminal Law 487-490; Miller, Criminal Law 97-101; Sayre, *Criminal Attempts,* 41 Harv.L.Rev. 821, 850-855; Keedy, *Criminal Attempts at Common Law,* 102 U.Penn.L. Rev. 464, 486-488).

 One of the purposes of the criminal law is to protect society from those who intend to injure it. When it is established that the defendant intended to commit a specific crime and that in carrying out this intention he committed an act that caused harm or sufficient danger of harm, it is immaterial that for some collateral reason he could not complete the intended crime. Although the law does not impose punishment for guilty intent alone, it does impose punishment when guilty intent is coupled with action that would result in a crime but for the intervention of some fact or circumstance unknown to the defendant. (See *People* v. *Lee Kong,* 95 Cal. 666, 668 [30 P. 800, 29 Am.St.Rep. 165, 17 L.R.A. 626] ; *People* v. *Grant,* 105 Cal.App.2d 347, 355-357 [233 P.2d 660].)

 In the present case there was not a legal but only a factual impossibility of consummating the intended offense, i.e., the intended victim was not deceived. *People* v. *Werner, supra,* 16 Cal.2d 216, 225, is overruled and *People* v. *Schroeder,* 132 Cal.App.2d 1, 6-8 [281 P.2d 297], is disapproved to the extent that they hold that deception of the intended victim and his reliance on the false representations are essential elements of the offense of attempted grand theft by false pretenses.

 Defendant's contention that the evidence is insufficient to support the conviction of attempted extortion is also without merit. Section 524 of the Penal Code provides that "every person who attempts, by means of any threat, such as is specified in section 519 of this code, to extort money or other property from another is punishable. . . ." Section 519 provides, in part, that : "Fear, such as will constitute extortion, may be induced by a threat . . . to do an unlawful injury to the person or property of the individual threatened. . . ." The record shows that at the June 18th meeting defendant stated to Murphy that "the old man" had already paid the bribe to the officials in Sacramento on Murphy's behalf and that he would have to be reimbursed "or else." He warned : "[T]hat is something that you have to come up with. Otherwise you are going to . . . up your whole joint. You are going to jeopardize

the whole place. You have got to raise the money somewhere, Bill, because that is one thing the old man won't stand for. . . . When you break your word with him you might as well fold that . . . joint." The inference is reasonable that defendant intended to secure money from Murphy by threatening to procure the revocation of his license or otherwise interfere with his business by unlawful means. The evidence supports the implied finding that defendant attempted to place Murphy in fear of unlawful injury to his business or his person if the money was not paid to him, and thus sustains the conviction of attempted extortion. (Compare *People* v. *Hopkins*, 105 Cal.App.2d 708, 709-710 [233 P.2d 948]; *People* v. *Franquelin*, 109 Cal.App.2d 777, 783-784 [241 P.2d 651]; see 21 Cal.Jur.2d 602, 603.)

Defendant contends that the two convictions cannot stand because of the provision of section 654 of the Penal Code that "an act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either bars a prosecution for the same act or omission under any other. . . ." This section has been applied to prohibit the double punishment of an accused not only where he has committed but one "act" in the ordinary sense, but also "where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654. Where the question is whether a transaction is divisible or indivisible, each case must be resolved on its facts." (*People* v. *Brown*, 49 Cal. 2d 577, 591 [320 P.2d 5].) The record in the present case discloses that defendant committed both the crime of attempted grand theft and the crime of attempted extortion and that his conviction for both crimes, with concurrent sentences, was proper. Defendant first tried to get $720 from Murphy by falsely representing to him that certain charges on file against his business could be "fixed" with the Alcoholic Beverage Control Board and he met with Murphy to collect the bribe money. This conduct constituted an attempted grand theft by false pretenses. Defendant also went further. After realizing that he was going to encounter difficulty in securing the $720 from Murphy, he attempted to extort the money from Murphy by veiled threats of injury to his person or his business. Since a "separate and distinct act [has] been

established as the basis of each conviction . . ." (*People* v. *Knowles*, 35 Cal.2d 175, 187 [217 P.2d 1]), the judgment on both counts was proper. (See *In re Chapman*, 43 Cal.2d 385, 388-391 [273 P.2d 817]; *People* v. *Slobodion*, 31 Cal.2d 555, 561-563 [191 P.2d 1]; *People* v. *Goodman*, 159 Cal.App.2d 54, 60-62 [323 P.2d 536].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Schauer, J., Spence, J., McComb, J., and Peters, J., concurred.