STATE OF CONNECTICUT *v.* HARRISON WASHINGTON (6060)

BIELUCH, STOUGHTON and NORCOTT, Js.

Argued April 21—decision released August 30, 1988

*Joette Katz,* public defender, for the appellant (defendant).

*Timothy J. Sugrue,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Susan C. Marks,* deputy assistant state's attorney, for the appellee (state).

NORCOTT, J. After a trial to a jury, the defendant was found guilty of the crime of attempted assault in the first degree in violation of General Statutes §§ 53a-49[1]

---

[1] General Statutes § 53a-49 provides in pertinent part as follows: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for

and 53a-59 (a) (1)[2] and was acquitted of a charge of first degree robbery. The defendant, in his appeal from the judgment of conviction, raises the following four claims of error: (1) whether the trial court's instructions deprived him of his constitutional rights by presenting for the jury's consideration theories of liability unsupported by the evidence; (2) whether the court failed to instruct the jury adequately on all the essential elements of General Statutes § 53a-59 (a) (1); (3) whether the court's instruction with respect to General Statutes § 53a-49 (b) unconstitutionally limited the jury in its role as factfinder of an essential element of the crime of attempted assault in the first degree; and (4) whether the state produced sufficient evidence to prove the defendant guilty of the crime of which he was convicted. We find no error.

From the evidence presented at trial, the jury could reasonably have found the following facts. At approximately 1:15 a.m. on October 24, 1986, Robert Dellarocco left a bar in Ansonia and began to walk to his boss' house where he intended to spend the night. While en route, Dellarocco met a man with whom he discussed

___

or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime. . . ."

[2] General Statutes § 53a-59 provides in pertinent part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument. . . ."

the possibility of a drug purchase. Dellarocco followed the man into a nearby housing project where Dellarocco purchased $25 worth of cocaine. After the exchange, the two men separated.

As Dellarocco continued through the project on his way to his boss' house, he was confronted by an unknown black male and black female. The male approached him, placed a small, silver handgun to Dellarocco's head and demanded money. The woman began to rifle through Dellarocco's pockets whereupon Dellarocco grabbed the gunman's arm and began to struggle with him. During this struggle, the gun discharged once, striking no one. At this point, the man who had earlier sold Dellarocco the cocaine reappeared and joined the fray in an attempt to take the contents of Dellarocco's pockets. The struggle continued, and the gunman forced the handgun towards Dellarocco's midsection. Dellarocco heard a "click," which he took to be the sound of the hammer of the weapon being cocked. The confrontation ended when the woman yelled "police," and the assailants fled.

Ansonia police officer Richard Spataforte testified that sometime after midnight on the night in question, he responded to the sound of a gunshot which he believed came from the Olson Drive project. While investigating, he met Dellarocco who claimed that he had just been robbed of money, which had been folded in sequence in his pocket. Dellarocco told the officer that the man who had stolen the money was black and was wearing very thick eyeglasses. Spataforte put Dellarocco into his squad car and drove to the rear of the project where the defendant and a black female, Denise Glover, both known to Spataforte, approached the car. The two persons were being closely followed by two police officers. Upon seeing the defendant, Dellarocco exited the car and identified him as the gunman. Spataforte then arrested the defendant whom he described as wearing eyeglasses with extremely thick lenses. A search of the defendant's wal-

let revealed $108, $92 of which was folded in sequential order and the remainder of which was indiscriminately stuffed therein.

A second Ansonia police officer, Michael Abbels, also arrived at the project to investigate the report of the gunshot. While on foot, he observed the defendant and Glover moving toward him at a quick pace. Upon seeing the uniformed Abbels, the defendant ran into a building stairwell. Abbels testified that as he followed the defendant he observed him have a quick dialogue with two unknown persons in the vicinity of the second floor landing, and then continue to the third floor balcony where he appeared to hide something in a trash pile. The defendant then came back downstairs and, with Abbels and another Ansonia police officer following, walked toward Spataforte's squad car.

Abbels further testified at trial that he retraced the defendant's path up the stairwell and found an unexploded .38 caliber bullet with a dented primer on the second step and the remainder of a box of .38 caliber bullets in the trash pile on the third floor. The handgun was never located.

At trial, Abbels, who was qualified as an expert in firearms, testified as to the mechanics of firing a single action handgun and further testified that the dented primer on the recovered bullet was probably caused when an attempt to fire the bullet resulted in a misfire.

I

The defendant first claims that the trial court erred in reading General Statutes § 53a-49 (b) in its entirety to the jury in an attempt to explain what types of conduct would constitute a "substantial step" in an overall course of conduct planned to culminate in the commission of a crime in violation of General Statutes § 53a-49 (a) (2). The defendant maintains, inter alia,

that only three of the examples listed under General Statutes § 53a-49 (b) were potentially relevant to the evidence and that the jury was therefore misled and confused by improper instructions which invited them to consider theories of liability unsupported by the evidence. We disagree.

We first note that the defendant did not take an exception to this claimed instructional error at trial and that he seeks review under the "exceptional circumstances" doctrine of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). Because the defendant's claim involves a question of the denial of his fundamental constitutional right not to be convicted except upon proof beyond a reasonable doubt of each and every element of the charged offense, we will afford this claim *Evans* review. See *State* v. *Williams,* 202 Conn. 349, 363, 521 A.2d 150 (1987). "[Our Supreme] court has consistently held that a claim that the judge improperly instructed the jury on an element of an offense is appealable even if not raised at trial." (Citations omitted.) Id.

The test to be applied to the review of alleged instructional error is whether "the charge considered as a whole presents the case to the jury so that no injustice will result." *State* v. *Stevenson,* 198 Conn. 560, 569, 504 A.2d 1029 (1986). In this case, reading the court's instructions as a whole, we find that the court correctly presented the case to the jury. In reading the text of General Statutes § 53a-49 (b) to the jury, the court was merely illustrating what type of conduct could constitute a "substantial step" in an overall course of conduct planned to culminate in the commission of a crime. In fact, just prior to reading the text of the statute to the jury, the court informed them that "these are examples." Our Supreme Court has, in the past, approved of the practice of providing the jury with examples to help it to understand complex legal principles. *State* v. *Kurvin,* 186 Conn. 555, 569, 442 A.2d 1327 (1982).

We have no doubt that the court's instructions in this case aided the jury in understanding the difficult concept of what constitutes a "substantial step." We further note that, to the extent the court's instructions were overinclusive, the defendant has not met the burden of showing how he was prejudiced by the charge. See *State* v. *Townsend*, 206 Conn. 621, 627, 539 A.2d 114 (1988). Reviewing the charge as a whole, we find that the trial court used the irrelevant statutory examples only as illustrations and not as various statutory bases of liability which were unsupported by the evidence for the jury to consider. Cf. *State* v. *Williams*, supra, 363.

## II

The defendant's second claim of error is that the trial court failed to instruct the jury adequately on all the essential elements of General Statutes § 53a-59 (a) (1). We, again, will afford *Evans* review to this claim of instructional error not raised at trial.

The essence of the defendant's claim is that the trial court erred by not instructing the jury that a violation of General Statutes § 53a-59 (a) (1) requires not only an intent to cause serious injury to another person but also an intent that the injury be caused by means of a deadly weapon or a dangerous instrument. We find the defendant's claim to be wholly without merit.

We have recently rejected a similar claim, based principally on General Statutes § 53a-60 (a) (2),[3] in *State* v. *Tucker,* 9 Conn. App. 161, 167–68, 517 A.2d 640 (1986). While *Tucker* dealt with the crime of assault in the second degree in violation of General Statutes § 53a-60 (a) (2), the pertinent statutory language regarding "intent"

[3] General Statutes § 53a-60 (a) provides: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or a third person by means of a deadly weapon or a dangerous instrument."

is identical to that in General Statutes § 53a-59 (a) (1). General Statutes § 53a-59 (a) (1) is a statutory crime which confines the element of intent to the "intent to cause serious physical injury." The intent instruction used by the trial court here is indistinguishable from numerous charges which our Supreme Court and this court have repeatedly approved with respect to General Statutes § 53a-59 (a) (1). See *State* v. *Brokaw,* 183 Conn. 29, 33–34 n.3, 438 A.2d 815 (1981); *State* v. *Truppi,* 182 Conn. 449, 461–62 n.9, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981); *State* v. *Fernandez,* 5 Conn. App. 40, 50, 496 A.2d 533 (1985). Accordingly, we find no error on this claim.

## III

The next claim of error is that the trial court's instructions as to General Statutes § 53a-49 (b) were tantamount to a directed verdict of guilty in violation of the defendant's state and federal constitutional rights to a fair trial.[4] Once again we note that this claim was not raised in the trial court by a written request to charge or an exception, but the claim warrants our review under the exceptional circumstances exception of *State* v. *Evans,* supra. See *State* v. *Findlay,* 198 Conn. 328, 345, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986).

The defendant contends that the court's instructional error turned a question of fact for the jury into a judi-

---

[4] The defendant claims that his constitutional right to due process was violated under both the federal and Connecticut constitutions. The constitution of Connecticut, article first, § 8, provides in pertinent part: "No person shall be . . . deprived of life, liberty or property without due process of law." The fifth amendment of the United States constitution provides in pertinent part: "No person shall . . . be deprived of life, liberty, or property, without due process of law," and the fourteenth amendment provides: "[N]or shall any state deprive any person of life, liberty or property, without due process of law."

cial determination. We first recognize that a trial court may never impose a directed verdict of guilty regardless of the weight of the evidence; General Statutes § 54-89; *State* v. *Ubaldi,* 190 Conn. 559, 573, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983); and that "it is the state's constitutional burden to prove each element of the crime charged beyond a reasonable doubt." (Citations omitted.) *State* v. *Pollitt,* 205 Conn. 132, 151, 531 A.2d 125 (1987).

During its charge on "attempt" to commit a crime under the provisions of General Statutes § 53a-49 (b), the trial court instructed the jury that the examples of behavior articulated in the statute were strongly corroborative of a defendant's criminal purpose and should not be held insufficient as a matter of law.[5] General Statutes § 53a-49 (b) actually provides, in pertinent part, that the statutory examples of a substantial step "if strongly corroborative . . . shall not be held insufficient as a matter of law." The state concedes that the challenged instruction is technically erroneous, and thus our review of this claim is limited to whether the error was harmful.

---

[5] The pertinent section of the trial court's instructions to the jury reads: "The state has also charged the accused with the crime of attempted assault in the first degree, in violation of 53a-49, and 53a-59 (1), of the Connecticut General Statutes. . . .

"Again, you must determine what intention the defendant had in his mind. As I have previously stated, you may determine his intent from his conduct in the light of the surrounding circumstances and from what he himself may have at any time said his intention was. To be a substantial step, the conduct must be strongly corroborative of the defendant's criminal purpose.

"Without negating the sufficiency of other conduct, the following is strongly corroborative of the actor's criminal purpose and shall not be held insufficient as a matter of law: lying in wait; searching for or—these are examples—lying in wait; searching for or following the contemplated victim of the crime; enticing or seeking to entice the contemplated victim of a crime to go to the place contemplated for its commission; reconnoitering the place contemplated for its commission; unlawful entry of a structure,

In examining jury charges, we review the instructions as a whole and do not judge individual instructions " ' "in artificial isolation from the overall charge." (Citations omitted.) *Cohen* v. *Cohen,* 182 Conn. 193, 199, 438 A.2d 55 (1980).' *State* v. *Braswell,* 194 Conn. 297, 311, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985)." *State* v. *Usry,* 205 Conn. 298, 314–15, 533 A.2d 212 (1987). If, in the context of the entire charge, the challenged instruction is harmless beyond a reasonable doubt reversal is not required. *State* v. *Coleman,* 14 Conn. App. 657, 679–82, 544 A.2d 194 (1988).

Examining the jury charge in its entirety against these standards, we find harmless error. The present case is very similar to *State* v. *Price,* 205 Conn. 616, 620, 534 A.2d 1196 (1987), where our Supreme Court held that another misstatement of the corroborative principle language in General Statutes § 53a-49 (b) was harmless error because the jury instructions, when viewed in their entirety, properly guided the jury in their determination of whether the essential elements of the crime had been proven.

We have already noted that the trial court made it clear that the articulated list of "substantial steps" under General Statutes § 53a-49 (b) were but examples

---

vehicle or enclosure in which it is contemplated that the crime will be committed; possession of materials to be employed in the commission of the crime which are specifically designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; possession, collection or fabrication of materials to be employed in the commission of the crime when such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; soliciting an innocent agent to engage in conduct constituting an element of the crime.

"It is for you to determine on the evidence whether the accused intentionally did anything which constituted a substantial step in a course of conduct which he planned to culminate in the commission of the crime of assault in the first degree by means of a deadly weapon if the circumstances were as he believed them to be."

for the jury's consideration. In conjunction with this explanation, the trial court also clearly explained the corroborative principle of attempted assault in the first degree both before and immediately after the misstatement. Notwithstanding the misstatement of the statutory language, the jury was clearly told that it was their function to determine whether, in fact, any "substantive step" did exist.

Furthermore, we note that the element of intent was one of the most important elements in this case. It is clear from the trial court's charge that the responsibility to determine whether this element had been proven beyond a reasonable doubt was also left to the jury's factfinding role.

"In determining whether a jury instruction was misleading, it is appropriate to consider how it bears on the issues in the case. See generally *State* v. *Huff,* 10 Conn. App. 330, 331–32, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987)." *State* v. *Shaw,* 12 Conn. 294, 305, 530 A.2d 653 (1987). In the present case, the state's evidence, set forth in detail above, was strong. The evidence of the defendant's conduct was clearly not consistent with that of an innocent person. From the strength of the evidence and the inferences which could be reasonably drawn therefrom, it is not reasonably possible that the jury, in finding the defendant guilty of attempted assault in the first degree, could have been misled by the trial court's misstatement. See *State* v. *Price,* supra, 621. We find that the jury instruction gave the jurors a clear understanding of the elements of the crime charged, and that, although the trial court made a technical misstatement with respect to the statutory language, it is not reasonably possible that the language complained of could have affected the jury's verdict. There was no constitutional error in the instruction.

## IV

The defendant's final claim of error is that there was insufficient evidence to support the jury's guilty verdict of attempted assault in the first degree. The defendant maintains that the state failed to prove beyond a reasonable doubt that the defendant possessed the intent to cause the victim serious physical harm under the provisions of General Statutes § 53a-59 (a) (1) and that the defendant engaged in conduct which constituted a "substantial step" which was "strongly corroborative" of the criminal purpose of assault in the first degree under the provisions of General Statutes § 53a-49 (b).

" 'When a claim on appeal challenges the sufficiency of the evidence, we undertake a two part task. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' *State* v. *Simino,* 200 Conn. 113, 116–17, 509 A.2d 1039 (1986)." *State* v. *Summerville,* 13 Conn. App. 175, 184–85, 535 A.2d 818 (1988). The relevant question for our review is whether, after viewing the evidence in the light most favorable to the state, " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983), quoting *Jackson* v. *Virginia,* 443 U.S. 307, 317–18, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

We find that, under these standards, the defendant's claim of error must fail. The defendant first contends that the evidence of his intent to cause serious physi-

cal injury was insufficient because the state failed to prove that he deliberately aimed the firearm at the victim or that he pulled the trigger. Intent usually is proved only by circumstantial evidence and inferred from the conduct and statements of the defendant. *State* v. *Morrill,* 193 Conn. 602, 609, 478 A.2d 994 (1984). "Where there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide." Id.

In the present case, the victim, Dellarocco, testified that the defendant had initially pointed a gun at his head before the struggle between the two men ensued. Dellarocco further testified that during the struggle, the defendant threatened him with "a bullet in the chamber" and then aimed the gun at his midsection. Dellarocco heard the sound of a "click," which according to the expert witness on firearms, if "loud" and "resounding," represented the sound of the hammer being released by the pull of the trigger. The expert, Abbel, testified further that the .38 caliber bullet which he himself had found on the stairway showed signs of a "dented primer," indicating that the gun had misfired in an attempt to expel the bullet. From this evidence, the jury could well have reasonably concluded that, but for the misfire, the victim would have been shot in the stomach. On the basis of the cumulative effect of this evidence, we cannot say that there was insufficient evidence of the defendant's conduct from which the jury could reasonably have inferred that the defendant intended to shoot the victim and thus cause him serious physical injury.

The defendant next asserts that the evidence does not establish beyond a reasonable doubt that he committed an act which constituted a substantial step toward the commission of assault in the first degree.

" "To constitute a "substantial step," the conduct must be "strongly corroborative of the actor's criminal purpose.". . . "The application of this standard will, of course, depend upon the nature of the intended crime and the facts of the particular case. . . . This standard properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime." ' (Citations omitted.)" *State v. Upshaw,* 7 Conn. App. 257, 261, 508 A.2d 791 (1986), quoting *State* v. *Green,* 194 Conn. 258, 276–77, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985).

Under the facts of this case, which do not bear repeating here, it is clear that the defendant's conduct during the struggle with Dellarocco fully established sufficient evidence from which the jury could have reasonably concluded that he took a "substantial step" toward the commission of the crime of assault in the first degree. The act of pulling the trigger of a loaded handgun, while it is pointed at the midsection of a person, is strongly corroborative of an intention to cause serious physical injury to that person. We find that the defendant's argument that these circumstances cannot reasonably be construed to exclude beyond a reasonable doubt a rational hypothesis consistent with elements associated with crimes other than that for which the defendant was found guilty is unpersuasive and without merit.

We conclude that sufficient evidence existed for the jury to reasonably have found that the defendant committed a substantial step in a course of conduct planned to culminate in his commission of the crime so as to justify his conviction for attempted assault in the first degree.

There is no error.

In this opinion the other judges concurred.